**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 1:26-cv-21013-GAYLES**

**ELISEO YOEL ALLOUIS-DIAZ,**

     **Petitioner**,

**v.**

**FIELD OFFICE DIRECTOR,**
**Miami Field Office, et al.,**

     **Respondents.**

                              /

## <u>ORDER</u>

**THIS CAUSE** comes before the Court on Petitioner Eliseo Yoel Allouis-Diaz's Verified

Petition for Writ of Habeas Corpus and Complaint to Compel Agency Action (the "Petition")

against Respondents Field Office Director, Miami Field Office, U.S. Immigration and Customs

Enforcement ("ICE") and Field Office Director, Miami Field Office, U.S. Citizenship and

Immigration Services ("USCIS") (together, "Respondents"). [ECF No. 1]. Petitioner challenges

his detention at the Broward Transitional Center in Pompano Beach, Florida ("BTC") without

being afforded an individualized bond determination. *See generally id*. Respondents filed a

Response in Opposition to the Petition, [ECF No. 6], and Petitioner filed a Reply, [ECF No, 7].

The Court has considered the record, the parties' written submissions, and applicable law. For the

following reasons, the Petition is **GRANTED IN PART**.

I.      **BACKGROUND**

     A.      **Petitioner's Immigration History in the United States**

On July 4, 2023, Petitioner, a Cuban national, presented himself at the Paso Del Norte Port

of Entry, seeking admission to the United States. [ECF No. 6-1]. The same day, the Department

of Homeland Security ("DHS") paroled Petitioner into the United States[1] and served him with a notice to appear ("NTA") for a removal proceeding in Miami on September 3, 2026. [ECF Nos. 6-1, 6-2].

On October 10, 2024, Petitioner filed an application to Register Permanent Residence or Adjust Status under the Cuban Adjustment Act. [ECF No. 1-1 at 10]. While his application was pending, the Florida Highway Patrol stopped Petitioner during a traffic stop on June 7, 2025. Petitioner was detained and transferred to ICE, Enforcement and Removal Operations' ("ERO") custody. [ECF No. 6-3]. On September 25, 2025, an Immigration Judge (the "IJ") held a hearing at BTC on Petitioner's asylum application. The IJ denied Petitioner's application and ordered him removed to Cuba. [ECF No. 6-5]. On October 17, 2025, Petitioner appealed the IJ's decision to the Board of Immigration Appeals. [ECF No. 6-6]. The appeal is pending. On March 6, 2026, USCIS denied Petitioner's application to adjust his status. [ECF No. 6-8].

To date, Petitioner remains in ICE custody at BTC. [ECF No. 1]. Petitioner states in his Petition that he has no criminal arrest history. [ECF No. 1-1 at 19]. However, in its notice denying Petitioner's application for permanent residence, USCIS states that court records in Michigan establish that Petitioner committed the criminal offense of possession with intent to deliver over two times the allowable limit of marijuana for a commercial purpose. [ECF No. 6-8].

**B.    Petitioner's Habeas Petition**

On February 16, 2026, Petitioner filed the Petition alleging two claims: Petition for Writ of Habeas Corpus against ICE (Count I) and Agency Action Unlawfully Withheld and Unreasonably Delayed against USCIS (Count II).[2] *Id*. In Count I, Petitioner asks this Court to

---

[1] Petitioner's parole expired on July 2, 2024

[2] In Count II, Petitioner asked the Court to compel USCIS to adjudicate his pending application for permanent residence. [ECF No. 1]. USCIS denied the application for permanent residence on March 6, 2026. [ECF No. 6-8]. Therefore, Count II shall be dismissed as moot.

order his immediate release or order that he be provided an individualized bond hearing under 8 U.S.C. § 1226(a). *Id*. On March 9, 2026, Respondents filed a Response in Opposition to the Petition, arguing primarily that Petitioner is not entitled to an individualized bond hearing because Petitioner is detained under 8 U.S.C. § 1225(b)(2), not § 1226(a). [ECF No. 6].

## II.    LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . ." 28 U.S.C. § 2241(a).  "Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). This Court has jurisdiction over challenges involving immigration detention as to whether Petitioner is detained subject to § 1225(b)(2) or § 1226(a). *See, e.g., Puga v. Assistant Field Off. Dir., Krome N. Serv. Processing Ctr.*, No. 25-24535-CIV, 2025 WL 2938369, at \*2 (S.D. Fla. Oct. 15, 2025) (holding the Court has jurisdiction to decide whether petitioner is subject to § 1226(a) or § 1225(b)(2)); *Nguyen v. Parra*, No. 25-CV-25325-JB, 2025 WL 3451649, at \*2 (S.D. Fla. Dec. 1, 2025) (same).

## III.    ANALYSIS

### A.  Detention

The core disagreement remaining between Petitioner and Respondents is whether Petitioner is detained under § 1225(b)(2), and is thus ineligible for bond, or § 1226(a), which allows for release on bond. Section 1225(b) governs the inspection of applicants for admission, which is defined in § 1225(a)(1) as "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . ." 8 U.S.C. § 1225. Detention for applicants for admission under § 1225(b)(2) is mandatory and, as such, an applicant for admission is ineligible for bond. *See, e.g., Nguyen*, 2025 WL 3451649, at \*3 (citing *Gomes v. Hyde*, No. 25-cv-11571, 2025 WL 1869299, at \*8 (D. Mass. July 7, 2025)).

In contrast to applicants seeking admission into the United States, "[§ 1226(a)] also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings. . . ." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Section 1226(a) states that a noncitizen already present in the United States "may be arrested and detained pending a decision on whether the alien is to be removed from the United States" and may be released on bond. 8 U.S.C. § 1226(a)(2). Thus, this statute "establishes a discretionary detention framework," *Gomes,* 2025 WL 1869299, at *2, unlike the mandatory detention framework of § 1225(b)(2). Importantly, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306.

On July 8, 2025, the DHS issued a notice to all ICE employees, indicating that any noncitizen in the United States who has not been formally admitted or paroled shall be considered an applicant for admission and shall be subject to § 1225(b)(2). *See, e.g., Merino v. Ripa, 2025 WL 2941609, at *3* (citing ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607 (July 8, 2025)). Following this interpretation, the BIA held in *Matter of Yajure Hurtado* that an immigration judge had no authority to provide a bond hearing to a noncitizen, who had been living in the United States for years without admission or parole, because he is an applicant for admission under § 1225(b)(2), subject to mandatory detention. 29 I&N Dec. 216 (BIA 2025).

District Courts have overwhelmingly rejected the BIA's interpretation. "DHS's interpretation of the applicability of § 1225(b)(2), rather than § 1226, to noncitizens who have resided in the country for years and were already in the United States when apprehended, runs afoul of the statutes' legislative history, plain meaning, and interpretation by courts in the First,

4

Second, Fifth, Sixth, Eighth, and Ninth Circuits."[3] *Merino,* 2025 WL 2941609, at *3 (citing cases); *see also Puga*, 2025 WL 2938369, at *2 ("As explained, the statutory text, context, and scheme of section 1225 do not support a finding that a noncitizen is 'seeking admission' when he never sought to do so. Additionally, numerous courts that have examined the interpretation of section 1225 articulated by Respondents — particularly following the BIA's decision in *Matter of Yajure Hurtado* — have rejected their construction and adopted Petitioner's."); *Nguyen*, 2025 WL 3451649, at *3; *Ardon-Quiroz,* 2025 WL 3451645, at *7.

The Court agrees that the plain reading of the statute supports a finding that Petitioner, who has been living in the United States since 2023, is governed by § 1226(a) and not § 1252(b)(2). Petitioner is therefore entitled to a bond hearing under § 1226(a), and Count I is granted in part. The Court declines to reach the merits of Petitioner's due process claims as the Court is granting in part the relief requested for Count I. *See, e.g.*, *Nguyen*, 2025 WL 3451649, at *4 (declining to reach the merits of the petitioner's due process claim because it granted the requested relief in other counts but allowing the petitioner to reassert its due process claim if the respondents do not provide a bond hearing); *Puga*, 2025 WL 2938369, at *6 (same). If Respondents do not comply with this Order by providing Petitioner a bond hearing under § 1226(a), Petitioner may renew his due process claims. Since those claims are "unripe claim[s] contingent on Petitioner not receiving a custody determination hearing under section 1226(a), 'the Court must dismiss it without prejudice[.]'" *Nguyen*, 2025 WL 3451649, at *4 (citing *Babilla v. Allstate Ins. Co.*, No. 20-cv-1434, 2020 WL 6870610, at *1 (M.D. Fla. Aug. 27, 2020)).

---

[3] The Court acknowledges the Fifth Circuit's recent decision in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), which agreed with the government's position here. But that decision "distort[s] the statutory text, abstract[s] it from its context and history, ignore[s] the Supreme Court's clearly stated understanding of the statutory scheme, and wave[s] away the [government's] previous failure to detain millions of noncitizens as if it were a rounding error." *Id.* at 509 (Douglas, J., dissenting). Indeed, the Fifth Circuit's decision "is not binding here, and it contradicts the vast majority of district court opinions addressing the issue." *Lobovillalobos v. Hardin*, No. 2:26-cv-00446, 2026 WL 621380, at *2 n.1 (M.D. Fla. Mar. 5, 2026).

### B. Exhaustion of Administrative Remedies

Respondents also argue that the Court should dismiss the Petition because Petitioner has failed to exhaust administrative remedies. [ECF No. 8]. Not so. "[E]xhaustion is not required where . . . an administrative appeal would be futile." *Linfors v. United States*, 673 F.2d 332, 334 (11th Cir. 1982) (citing *Von Hoffberg v. Alexander*, 615 F.2d 633, 638 (5th Cir. 1980)). Importantly, the exhaustion requirement under 8 U.S.C. § 1252(d)(1) is prudential, "not jurisdictional." *Kemokai v. U.S. Att'y Gen.,* 83 F.4th 886, 891 (11th Cir. 2023). Here, since any "subsequent bond appeal to the BIA is nearly a foregone conclusion under *Yajure Hurtado*, any prudential exhaustion requirements are excused for futility." *Puga*, 2025 WL 2938369, at *2; *see also Ardon-Quiroz v. Assistant Field Dir.,* No. 25-CV-25290-JB, 2025 WL 3451645, at *5 (S.D. Fla. Dec. 1, 2025).

## IV.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

(1)   Petitioner Eliseo Yoel Allouis-Diaz's Verified Petition for Writ of Habeas Corpus and Complaint to Compel Agency Action, [ECF No. 1], is **GRANTED IN PART**. The Court finds that Petitioner falls under 8 U.S.C. § 1226(a).

(2)   Respondents shall afford Petitioner an individualized bond hearing consistent with 8 U.S.C. § 1226(a) on or before **April 10, 2026**, or release him.

(3)   Count II of the Petition is **DISMISSED as MOOT**.

(4)   This case is **CLOSED** for administrative purposes.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 28th day of March, 2026.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE